UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


URIEL ALBERTO-TOLEDO,　　　　　　　　　　　　Case No. 3:20-cv-01557-MC

　　　　Plaintiff,　　　　　　　　　　　　　　　　　OPINION AND ORDER

　　v.

WASHINGTON COUNTY; PAT
GARRETT; CAPRICE MASSEY,

　　　　Defendants.
_____

MCSHANE, District Judge.

Plaintiff, a pretrial detainee appearing pro se, filed suit pursuant to 42 U.S.C. § 1983 alleging that Washington County officials violated his federal constitutional rights by unlawfully detaining him pursuant to a United States Immigration and Customs Enforcement (ICE) administrative hold. Before the Court are defendants' Motion to Dismiss for Failure to State a Claim, plaintiff's Motion for Temporary Restraining Order (TRO), and plaintiff's Motion for Leave to Amend Complaint. Defendants' Motion to Dismiss and plaintiff's Motion for TRO are DENIED, and plaintiff's Motion for Leave to Amend is GRANTED, in part.

1　- OPINION AND ORDER

BACKGROUND

The following facts are taken from plaintiff's Amended Complaint (ECF No. 9) and its incorporated documents.

On June 6, 2019, plaintiff was arrested on state law charges in Washington County and booked into the Washington County Jail. The next day, plaintiff posted bail and was released from state custody pending trial.

On January 8, 2020, plaintiff was arrested and taken into custody by the U.S. Marshals on a federal charge of Illegal Reentry. Plaintiff maintains that his defense attorney informed Deputy District Attorney (DDA) Pulver, the prosecutor in his Washington County case, of plaintiff's arrest by federal authorities and his detention at the Multnomah County Jail on the federal charge.

On March 13, 2020, DDA Pulver filed a motion to show cause why plaintiff's bail and pretrial release should not be revoked in his Washington County case for failure to notify the state court of his new address, i.e., the Multnomah County Jail.

On March 16, 2020, the state court revoked plaintiff's bail and issued a warrant for his arrest. The court also imposed a new bail amount of $250,000.

On March 27, 2020, plaintiff pled guilty to the charge of Illegal Reentry in federal court and was sentenced to time served. Plaintiff contends that he was no longer in federal custody at that time, because ICE had not issued "a detainer or any other document seeking to take Plaintiff into custody." Am. Compl. ¶ 32. Plaintiff claims that he remained in custody at the Multnomah County Jail solely because of the arrest warrant and hold from Washington County on his state court charges.

Also on March 27, 2020, DDA Pulver filed a Motion for Transport Order in state court. The proposed Transport Order stated that plaintiff was "presently" in ICE custody and ordered plaintiff's release to the Washington County Sheriff's Office for his arraignment on state court charges in Washington County. Am. Compl. ¶ 30. Dickens Decl. Ex. A (ECF No. 20-1). The Order further stated that plaintiff "shall be returned" to ICE custody after his arraignment. *Id.* Plaintiff alleges that DDA Pulver knew ICE had issued no warrants or detainers against plaintiff at that time.

On March 30, 2020, the state court issued the Transport Order and plaintiff was transported to the Washington County Jail. Washington County Jail officials eventually informed plaintiff that he had no "holds" and could post bail on his state court charges.

On April 1, 2020, plaintiff posted bail a second time. Despite this, Washington County Jail officials would not release him. On March 31, 2020, Jail Commander Massey had lodged an ICE hold against plaintiff pursuant to the Transport Order. Plaintiff alleges that Commander Massey lodged the hold even though she knew ICE had not issued a detainer or warrant against plaintiff.

On April 2, 2020, plaintiff was transported to the Multnomah County Jail and taken into ICE custody. The same day, ICE issued a Form I-205 against plaintiff, which is a Warrant of Removal/Deportation.

While in ICE custody, plaintiff missed an April 3, 2020 state court appearance in Washington County, and DDA Pulver requested that plaintiff's bail be revoked due to his failure to appear. The state court revoked plaintiff's bail and imposed a new bail amount of $5,000,000. Plaintiff contends that DDA Pulver orchestrated plaintiff's absence at his state court hearing

through issuance of the Transport Order and then misled the state court by falsely blaming plaintiff for his failure to appear.

On April 8, 2020, plaintiff returned to state custody at the Washington County Jail and the ICE hold was again lodged against him. DDA Pulver, knowing plaintiff could not possibly appear in court on his own volition due to his custody status in another jurisdiction, requested forfeiture of plaintiff's bail. The state court judge placed plaintiff's bail money in a trust account.

Plaintiff grieved the issue of the ICE hold with the Washington County Sheriff's Office. Chief Deputy Degman ultimately dismissed plaintiff's grievance appeal, informing plaintiff that ICE must withdraw the hold before Washington County Jail could release him, even if plaintiff posted bail again on his state court charges.

In September 2020, plaintiff filed this § 1983 action and alleged violations of his constitutional rights arising from the ICE hold. The Court advised plaintiff of several deficiencies in his claims and allowed him the opportunity to amend. In response to the Court's Order, plaintiff filed an Amended Complaint and renewed his previous request for preliminary injunctive relief.

Construing plaintiff's allegations liberally, I found that plaintiff sufficiently alleged Fourth Amendment claims for damages against Commander Massey and Washington County arising from his continued detention after he posted bail on April 1, 2020, and a claim for injunctive relief against Sheriff Garrett in his official capacity arising from the ICE hold currently lodged against him. Order at 4-5 (ECF No. 15). I further found that DDA Pulver was entitled to absolute immunity for actions related to plaintiff's state court proceeding and dismissed the charges against him. *Id.*

I also ordered defendants to respond to plaintiff's Motion for TRO with respect to the current ICE hold against him. Defendants oppose plaintiff's motion and move to dismiss his claims for failure to state a claim. In turn, plaintiff moves for leave to file a second amended complaint.

DISCUSSION

A. Motion to Dismiss for Failure to State a Claim

Defendants move for dismissal on grounds that plaintiff's claims ultimately seek "federal court intervention to speed up his release from custody" and must be brought in a federal habeas action. Defs.' Mot. to Dismiss at 2 (ECF No. 21).

Defendants are correct that claims challenging the fact or duration of confinement usually "fall within the 'core' of habeas corpus" and must be brought in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). However, as construed by this Court, plaintiff's Fourth Amendment claims do not challenge the state court charges underlying his current confinement in state custody.[1] Rather, plaintiff's claims for damages seek compensation for the harm allegedly caused by the actions of Commander Massey and the policies of Washington County in extending his detention on April 1, 2020. Plaintiff's claim for injunctive relief seeks an order enjoining the Washington County Jail from extending plaintiff's detention pursuant to the ICE hold if he is otherwise entitled to release from custody.

Moreover, plaintiff cannot bring a federal habeas action challenging the ICE hold. "Habeas corpus proceedings are available only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n. 3 (2000) (quoting 28 U.S.C. § 2254(a)). Plaintiff is currently in state custody

---

[1] In my previous Order, I recognized that plaintiff's prayer for a lower bail amount implicated the legality of his current confinement in state custody and was not cognizable in a § 1983 action. *See* Order at 4, n.2 (ECF No. 15).

pursuant to state criminal charges, and the alleged ICE hold does not place plaintiff "in custody" for purposes of federal habeas relief. *See, e.g., Campos v. I.N.S.*, 62 F.3d 311, 314 (9th Cir. 1995) (affirming that a "bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available"); *Sayadeth v. Apker*, 2016 WL 8731393, at *2-3 (E.D. Cal. Oct. 7, 2016) (finding that "an ICE detainer does not place a petitioner 'in custody' for purposes of obtaining habeas corpus relief"). The "in custody" requirement of § 2254 is jurisdictional, and so long as plaintiff is in state custody, this Court lacks jurisdiction over a federal habeas action challenging the ICE hold against him. *Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009).

In sum, plaintiff's claims do not lie at the core of habeas relief, and defendants' Motion to Dismiss is denied on this ground.

B. <u>Motion for Preliminary Injunctive Relief</u>

Plaintiff requests that this Court grant preliminary injunctive relief and enjoin Washington County Jail officials from denying his release and extending his custody solely because of the ICE hold.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, plaintiff must establish: 1) the likelihood of success on the merits of the underlying claim; 2) the likelihood of irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. *Id.* at 20. In the Ninth Circuit, "serious questions going to the merits, as well as a balance of hardships that tips sharply towards the plaintiff, can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood

of irreparable injury and that the injunction is in the public interest." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 652, n. 6 (9th Cir. 2021) (citation omitted).

1. <u>Likelihood of Success on the Merits</u>

Plaintiff alleges that Washington County Jail officials have informed him they will not release him if he posts bail on his state court charges because of the ICE hold lodged against him. Plaintiff maintains that it is unconstitutional for Washington County Jail officials to extend his detention solely because of an administrative ICE hold.

In response to plaintiff's motion, defendants argue that they are entitled to absolute immunity from liability in this action, because they simply complied with the state court's Transport Order requiring plaintiff's return to ICE custody in April 2020.[2] *See Engebretson v. Mahoney*, 724 F.3d 1034, 1039-40 (9th Cir. 2013) (holding that corrections officials were entitled to absolute immunity from liability under § 1983 for complying with a facially valid court order). Granted, whether Commander Massey and Washington County Jail officials relied on the Transport Order could potentially defeat plaintiff's Fourth Amendment damages claim arising from his extended detention on April 1, 2020. However, their compliance with a court order in April of 2020 is irrelevant to plaintiff's claim that Washington County Jail may not rely on an administrative ICE hold to extend plaintiff's current detention if he posts bail and becomes eligible for release from state custody.

Once a detainee is entitled to release, law enforcement officials may not hold the detainee in custody for a different purpose without probable cause justifying the "new" seizure. *See, e.g., Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (explaining that a seizure justified by its initial purpose "can become unlawful"); *see also Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1250 (E.D.

---

[2] Defendants also repeat their argument that plaintiff's claims must be brought in a federal habeas action. As explained above, defendants are incorrect.

7   - OPINION AND ORDER

Wash. 2017) ("A new Fourth Amendment seizure occurs if, as a factual matter, a person's detention is extended because of an immigration hold."). If jail officials seek to extend the detention of pretrial detainee because of suspected immigration violations, the Fourth Amendment requires that they possess an adequate justification for a new seizure. *Arizona v. United States*, 567 U.S. 387, 413 (2012) (explaining that "[d]etaining individuals solely to verify their immigration status would raise constitutional concerns"); *Miranda-Olivares v. Clackamas Cty.*, Case No. No. 3:12-CV-02317-ST, 2014 WL 1414305, at *11 (D. Or. Apr. 11, 2014) ("In order for the County to hold a person beyond the period necessary to execute an order of legal authority to continue detention, it must meet the clearly defined reasonable seizure standards of the Fourth Amendment.").

Neither party presented evidence establishing the basis for the current ICE hold against plaintiff. Based on plaintiff's allegations, he is likely subject to removal after his conviction for Illegal Reentry and the ICE hold presumably arises from the Warrant of Removal/Deportation issued on April 2, 2020.

According to plaintiff's Amended Complaint, on March 27, 2020, he pled guilty to the federal charge of Illegal Reentry and was sentenced to time served. Am. Compl. ¶ 26. In his Plea Petition, plaintiff admitted that he was "an alien and citizen of Mexico" and had "previously been arrested and denied admission, excluded, deported, and removed from the United States as an alien on November 7, 2017." Plea Pet. ¶ 23, *United States v. Alberto-Toledo*, Case No. 3:19-cr-00366-IM (ECF No. 22). After his conviction, ICE issued a Form I-205, an administrative Warrant of Removal/Deportation. Am. Compl. ¶ 56. Plaintiff's admissions in open court and the Warrant of Removal/Deportation provide probable cause that plaintiff is a removable alien.

The question remains whether plaintiff's status as a removable alien provides Washington County Jail officials with a valid basis to extend plaintiff's detention without running afoul of the Fourth Amendment. *See Arizona v. United States*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States."). While probable cause of a civil immigration violation may permit the seizure of individuals by federal immigration officials, courts have held that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir. 2013); *see also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 977-78 (S.D. Ind. 2017) ("Only when acting under color of federal authority, that is, as directed, supervised, trained, certified, and authorized by the federal government, may state officers effect constitutionally reasonable seizures for civil immigration violations.").

Federal law does not expressly authorize the execution of Warrants of Removal/ Deportation by state or local officials. *See Lopez-Aguilar*, 296 F. Supp. 3d at 974 (citing 8 C.F.R. §§ 241.2, 287.5). Further, the State of Oregon prohibits any "law enforcement agency of the State of Oregon or of any political subdivision of the state" from using "agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws." Or. Rev. Stat. § 181A.820. Thus, it is unlikely that Washington County has an agreement with ICE or the Department of Homeland Security (DHS) to detain individuals for civil immigration violations. *See Lopez-Flores v. Douglas Cty.*, No. 6:19-CV-00904-AA, 2020 WL 2820143, at *3 (D. Or. May 30, 2020) (explaining that 8 U.S.C.

§ 1357(g)(1) authorizes DHS to enter into "287(g) agreements" with local governments to allow enforcement of immigration laws by local law enforcement officials).

Based on plaintiff's allegations, he raises serious questions whether the ICE hold provides Washington County authorities with a valid, constitutional basis to extend plaintiff's detention should he post bail and secure his release from state custody. I recognize that plaintiff has not presented any evidence to support his request for preliminary injunctive relief and the specific reason for the ICE hold against him has not been conclusively established. At the same time, defendants have not disputed plaintiff's allegations, and I accept them as true for purposes of this motion.

Accordingly, to the extent the ICE hold against plaintiff at the Washington County Jail is based solely on a civil immigration violation, plaintiff raises serious questions going to the merits of his Fourth Amendment claim for injunctive relief.

2. Likelihood of Irreparable Harm

Plaintiff's alleged irreparable harm is the Fourth Amendment violation arising from his continued unlawful detention. However, plaintiff does not allege that his current detention in state custody is unlawful or that Washington County Jail officials will imminently extend his detention because of the ICE hold. In fact, plaintiff is currently detained at Lane County Adult Corrections to answer criminal charges arising in Lane County.[3] "To support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough." *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. App'x

---

[3] For this reason, defendants argue that plaintiff's motion for injunctive relief is moot. *See Nelson v. Heiss,* 271 F.3d 891, 897 (9th Cir. 2001) (explaining that "when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility"). Plaintiff responds that he will likely return to Washington County Jail, where he would remain subject to the ICE hold. For purposes of this motion, I accept plaintiff's representation and do not find his motion to be moot.

676, 679 (9th Cir. 2011) (citing *Caribbean Marine Servs. Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988)).

Plaintiff nonetheless maintains that he will return to the Washington County Jail and the existence of the ICE hold would prevent him from posting bail because he knows he would not be released. However, plaintiff presents no evidence – such as affidavits or other documents – showing his current ability to post bail and secure his release from state custody on all charges pending against him. Absence such evidence, plaintiff fails to show the imminence of irreparable harm arising from the ICE hold at the Washington County Jail. For the same reasons, plaintiff fails to show that the balance of equities tips in his favor or that the injunction he requests is in the public interest.

Given the record before the Court and the lack of evidence presented to support plaintiff's claim of imminent harm, I am not inclined to impose the extraordinary remedy of preliminary injunctive relief, and his Motion for TRO is denied.

C. Leave to Amend

Plaintiff also moves for leave to file a second amended complaint. Plaintiff seeks to revive claims for damages against Sheriff Pat Garrett and DDA Pulver and claims alleging excessive bail and equal protection violations.[4] Plaintiff also seeks to add as defendants Assistant U.S. Attorney Sarah Barr and ICE agents Corey Heaton and Prince Planthara.

This Court considers five factors when determining whether to allow amendment: 1) bad faith; 2) undue delay; 3) prejudice to the opposing party; 4) futility of amendment; and 5) the opportunity for previous amendment. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

---

[4] Plaintiff alleged these claims in his Amended Complaint, and they were dismissed for failure to state a claim. Order at 5-6 (ECF No. 15).

11   - OPINION AND ORDER

Plaintiff's motion is granted with respect to his proposed claim against DDA Pulver and denied as futile in all other respects.

I previously found that DDA Pulver was entitled to absolute immunity, because plaintiff's claims against him appeared to implicate conduct "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citation omitted); *see also Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001). Plaintiff's proposed amendments make clear that plaintiff's claims arise from DDA Pulver's alleged falsehoods and misrepresentations before the state court. A prosecutor "is not entitled to absolute prosecutorial immunity for his conduct in swearing to facts in support of [a] bail revocation motion," because the prosecutor has "stepped outside of his prosecutorial role, and into the role of witness" when personally attesting "to the truth of facts in the affidavit." *Cruz v. Kauai Cty.*, 279 F.3d 1064, 1067 (9th Cir. 2002); *see also Kalina v. Fletcher*, 522 U.S. 118, 131 (1997).

Plaintiff alleges that DDA Pulver knowingly and deliberately lied in an affidavit and in sworn declarations to obtain the initial revocation of plaintiff's bail and a Transport Order that would unlawfully extend plaintiff's detention, cause plaintiff's missed court appearance, and trigger the second revocation of his bail. *See* Proposed Sec. Am. Compl. ¶¶ 19, 21-28, 30, 36-40, 62-63, 72-74, 77-78, 82-83 (ECF No. 30-1). Specifically, plaintiff alleges that DDA Pulver's March 13, 2020 affidavit in support of the motion to show cause intentionally omitted critical information in order to mislead the court and obtain the initial revocation of plaintiff's bail. *Id.* ¶¶ 21-26. Plaintiff further alleges that DDA Pulver's March 27, 2020 sworn declaration in support of the Transport Order falsely represented that plaintiff was in ICE custody in order to obtain an order requiring plaintiff's return to ICE custody. *Id.* ¶¶ 36-40. Plaintiff contends that the state court entered the Transport Order based on DDA Pulver's false assertions, and, as a

result, plaintiff was denied release from custody when he posted bail on April 1, 2020. *Id.* ¶¶ 46, 52, 57, 59.

Plaintiff further alleges that after his detention was unlawfully extended, DDA Pulver informed ICE agents Heaton and Planthara that plaintiff had a state court hearing on April 3, 2020 and "a warrant will be issued when Albert-Toledo [sic] fails to appear." Proposed Sec. Am. Compl. ¶ 63. Plaintiff claims that DDA Pulver orchestrated plaintiff's failure to appear at the hearing on April 3, 2020 and, during that hearing, intentionally misrepresented facts regarding plaintiff's absence in order to mislead the court and obtain the second revocation of plaintiff's bail. *Id.* ¶¶ 70-74. In sum, plaintiff alleges that DDA Pulver's falsehoods directly caused the revocation of plaintiff's bail on March 16, 2020, the unlawful extension of his detention on April 1, 2020, his missed court appearance on April 3, 2020, and the revocation of bail and imposition of an excessive bail amount after his failure to appear.

Construing these allegations liberally, plaintiff alleges that DDA Pulver stepped outside his role as a prosecutor and acted as a witness when he personally attested to facts supporting his motions and requests for bail revocation. Further, I find no undue delay, bad faith, or prejudice to the defendants. Accordingly, plaintiff may amend his complaint to include a Fourth Amendment claim for damages against DDA Pulver.

The remainder of plaintiff's proposed claims are futile and will not be allowed. *Nunes*, 375 F.3d at 808 ("Futility alone can justify the denial of a motion for leave to amend.").

Plaintiff's proposed amendments fail to state a Fourth Amendment claim for damages against Sheriff Garrett in his individual capacity. Liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor – such as the sheriff – is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the

violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff simply alleges that Sheriff Garrett knew plaintiff was entitled to release on April 1, 2020 without alleging facts that plausibly suggest Sheriff Garret had actual knowledge of plaintiff's custody status or personally participated in the decision to deny his release after he posted bail. *See* Proposed Sec. Am. Compl. ¶¶ 59-61 (ECF No. 30-1).

Further, plaintiff cannot bring § 1983 claims against Barr, Heaton, and Planthara, because they are federal officials and were not acting under color of state law. *See* 42 U.S.C. § 1983. Instead, plaintiff must bring claims against them pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Even if *Bivens* provided a remedy for plaintiff's claims – which is highly unlikely – plaintiff alleges no facts suggesting that Barr, Heaton, or Planthara personally participated in the allegedly unlawful extension of his confinement.[5] Plaintiff alleges only that Barr "put Defendants Heaton and Pulver in contact" and "instructed" them to "coordinate" plaintiff's Transport Order, and that Heaton and Planthara were informed plaintiff had a state court hearing and a warrant would issue. Proposed Sec. Am. Compl. ¶¶ 29, 63. Plaintiff does not allege that Barr instructed Pulver or Heaton to misstate facts or make false representations in order to secure plaintiff's continued detention, and plaintiff alleges no actions taken by Heaton or Planthara.

---

[5] In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights" under the Fourth Amendment. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (citation omitted). Since then, the Supreme Court has allowed a *Bivens* remedy in only two other contexts and has made clear that expanding the *Bivens* remedy is "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). If a *Bivens* remedy is sought in a new context, courts must assess "special factors counselling hesitation" against recognizing a *Bivens* remedy. *Id.* at 1858-1860. Plaintiff's proposed claims against Barr, Heaton, and Planthara arise in a new context because they differ "in a meaningful way from previous *Bivens* cases." *Id.* at 1859. Section 1983 provides plaintiff with a remedy against the Washington County defendants for his allegedly unlawful detention, and this fact, combined with the limited involvement of Barr, Heaton, and Planthara, would weigh heavily against a *Bivens* remedy in this context.

14   - OPINION AND ORDER

Plaintiff's proposed claims of excessive bail and equal protection violations likewise fail to state viable claims for relief. The named defendants were not involved in setting plaintiff's bail, and to the extent their conduct caused injury, those damages are encompassed within plaintiff's Fourth Amendment claims. Further, plaintiff alleges no specific facts suggesting that Washington County officials discriminated against him as a member of a class or singled him out for disparate treatment because of his ethnicity or national origin.

Finally, plaintiff seeks two forms of relief that this Court cannot provide. Plaintiff seeks a declaration that defendants' conduct violated Or. Rev. Stat. § 181A.820 and an order requiring defendants to abide by the Release Agreement plaintiff entered into when he posted bail on April 1, 2020. Proposed Sec. Am. Comp. Prayer for Relief ¶¶ 7, 11. Plaintiff does not bring claims under Or. Rev. Stat. § 181A.820 and a declaration that defendants violated this statute is beyond the scope of his claims. Likewise, the Release Agreement pertains to plaintiff's release on bail rather than Washington County's enforcement of the ICE hold against him, and it is not within the scope of his claim for injunctive relief.

## CONCLUSION

Plaintiff's Motions for Temporary Restraining Order (ECF Nos. 3, 11) and defendants' Motion to Dismiss (ECF No. 21) are DENIED. Plaintiff's Motion for Leave to Amend Complaint (ECF No. 30) is GRANTED with respect to his proposed Fourth Amendment claim against DDA Pulver and DENIED in all other respects.

Within 30 days from the date of this Order, plaintiff may file a Second Amended Complaint alleging: 1) the facts set forth in his proposed Second Amended Complaint; 2) claims for declaratory and compensatory relief against Commander Massey, Washington County, and DDA Pulver arising from plaintiff's allegedly unlawful detention in April 2020; and 3) a claim

for declaratory and injunctive relief against Sheriff Garrett in his official capacity arising from the current ICE hold against plaintiff.

IT IS SO ORDERED.

DATED this 15th day of July, 2021.

s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge